DANIEL BLAU (Cal. Bar No. 305008)
BlauD@sec.gov
DANIEL LIM (Cal. Bar No. 292406)
LimD@sec.gov
JACOB REGENSTREIF (Cal. Bar No. 234734)
RegenstreifJ@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Katharine E. Zoladz, Co-Acting Regional Director
Gary Leung, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| CHARLES TRALKA, THOMAS BRAEGELMANN, MATTHEW SULLIVAN, JORDAN E. GOODMAN, ROBERT L. BARR, and GOOD STEWARD CAPITAL MANAGEMENT, INC., | |
| Defendants, | |
| And | |
| SECURED REAL ESTATE INCOME FUND I, LLC and SECURED REAL ESTATE INCOME STRATEGIES, LLC, | |
| Relief Defendants. | |

Plaintiff Securities and Exchange Commission ("the Commission" or "the SEC") alleges:

## SUMMARY OF THE ACTION

1.     This securities enforcement action concerns an offering fraud perpetrated by the individuals and entities behind two real estate investment funds, Secured Real Estate Income Fund I, LLC ("Income Fund") and Secured Real Estate Income Strategies, LLC ("Income Strategies") (collectively, the "Funds" or "Relief Defendants"). From April 2016 through March 2021, Income Fund and Income Strategies raised over $7.3 million from about 147 investors based on a series of false promises.

2.     Both of the Funds' offering documents and marketing materials misled investors regarding a number of material issues. First, the Funds' offering documents and marketing materials falsely promised the payment of reliable monthly distributions at an 8% annual rate; in reality, the funds never made distributions anywhere close to those promised, and they never had the investments or income to justify their promises of 8% returns. Second, the Funds' offering documents and marketing materials falsely boasted that managing members Charles Tralka and Thomas Braegelmann had over fifty years of real estate investing experience; in reality, Tralka and Braegelmann had almost no experience investing in real estate for others. Third, the Funds' offering documents and marketing materials falsely promised that SEC-registered investment adviser Good Steward Capital Management, Inc. ("Good Steward") would make the Funds' investment decisions; in reality, Tralka and Braegelmann primarily decided how the funds would invest. Good Steward and Robert L. Barr, though described as the Funds' investment adviser, primarily served only in an administrative capacity. Finally, although Income Strategies' offering circular stated that it would meet its $1 million investment threshold with investments from third parties, and keep investor funds in escrow until such time, Income Strategies in fact met this threshold through investments from related parties Income Fund and Good Steward and also failed to keep investor funds in escrow.

3.     Managing member Matthew Sullivan acted as investor relations, and managing member Jordan E. Goodman drummed up potential investors through his syndicated radio show.

4.     By their actions, Defendants Tralka, Braegelmann, Sullivan, Goodman, Good Steward, and Barr violated the federal securities laws. Specifically: Defendants Tralka, Braegelmann,

and Sullivan violated Sections 5(a), 5(c), and 17(a)(1) and(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Rules 10b-5(a)-(c) thereunder.  Goodman violated Sections 5(a) and 5(c) of the Securities Act.  Good Steward and Barr violated Sections 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a)-(c) thereunder.

5.      The SEC requests, among other things, that the Court: (i) permanently enjoin defendants Tralka, Braegelmann, Sullivan, Goodman, Good Steward, and Barr from further violating the federal securities laws; (ii) permanently enjoin defendants Tralka, Braegelmann, Sullivan, Goodman, and Barr from participating in the issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer; (iii) permanently bar defendants Tralka, Braegelmann, Sullivan, and Barr from serving as an officer and director; (iv) order Defendants and Relief Defendants to pay disgorgement with prejudgment interest; and (v) order defendants to pay civil monetary penalties based upon these violations.

## **JURIDISTION AND VENUE**

6.      The Commission brings this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

7.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

8.      Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Acts, practices, transactions, and courses of business that form the basis for the violations alleged in this Complaint occurred within this district.  In addition, venue is proper in this district because Defendants Tralka and Braegelmann reside in this district and Relief Defendants Income Fund and Income Strategies have their principal place of business in this district.

9.      Under Civil Local Rule 3-2(c) and (e), this case should be assigned to the San Jose

Division because a substantial part of the events or omissions that give rise to the claims alleged herein occurred in Santa Clara County.

## **DEFENDANTS**

10.     Charles Tralka is a resident of Santa Clara, California. He is a director and manager of Income Fund's managing member, SREIF Manager I, LLC and the chief investment officer of Income Strategies' managing member, SREIF Manager II, LLC. He has never held any securities licenses and is not associated with any entity registered with the Commission.

11.     Thomas Braegelmann is a resident of Campbell, California. He is a director and manager of SREIF Manager I and the chief executive officer of SREIF Manager II. He has never held any securities licenses and is not associated with any entity registered with the Commission.

12.     Matthew Sullivan is a resident of Kaysville, Utah. He is a director and manager of SREIF Manager I and the director of investor relations for SREIF Manager II. He is also the president of Crowdventure, LLC, through which he owns 50% of SREIF Manager I and 50% of SREIF Manager II. He formerly held a securities license in the United Kingdom but has never held any securities licenses in the United States and is not associated with any entity registered with the Commission.

13.     Jordan E. Goodman is a resident of Durham, North Carolina. Until January 2019, he was a director and manager of SREIF Manager I and was the investment director of SREIF Manager II. He formerly owned 20% of SREIF Manager I and 20% of SREIF Manager II through his wholly-owned entity, Amherst Enterprises, Ltd. He has never held any securities licenses and is not associated with any entity registered with the Commission. In December 2018, the SEC charged Goodman for touting and securities registration and broker-dealer registration violations involving the Woodbridge Group of Companies, LLC. Goodman settled the charges without admitting or denying the allegations and agreed to permanent injunctions against violating Sections 5 and 17(b) of the Securities Act and Section 15(a) of the Exchange Act, disgorgement of $2.29 million, plus prejudgment interest of $315,850, a $100,000 civil penalty, and a follow-on administrative proceeding ordering collateral and penny-stock bars. *See Securities and Exchange Commission v. Jordan E. Goodman*, No. 1:18-cv-25303 (S.D. Fla. filed Dec. 18, 2018); *In re Jordan E. Goodman*,

1   Rel. No. 34-85008 (Jan. 31, 2019).

2       14.     Good Steward Capital Management, Inc. is an Arizona corporation with its principal

3   place of business in Tucson, Arizona. Good Steward is owned by Robert Barr through Titan Holdings

4   Group, Inc., a holding company. Good Steward had one employee, Barr. Good Steward was

5   registered as an investment adviser with the Commission from 2016 to February 2022 when it

6   terminated its SEC registration. Good Steward is not state-registered and no longer functions as an

7   investment adviser.

8       15.     Robert L. Barr is a resident of Tucson, Arizona. He is Good Steward's CEO, CFO,

9   president, chief compliance officer and sole employee. Barr holds Series 7, 65, and 66 securities

10  licenses.

11                          **RELIEF DEFENDANTS**

12      18.      Secured Real Estate Income Fund I, LLC ("Income Fund") is a Delaware limited

13  liability company with its principal place of business in Campbell, California. Income Fund's

14  managing member is SREIF Manager I.

15      19.     Secured Real Estate Income Strategies, LLC ("Income Strategies") is a Delaware

16  limited liability company with its principal place of business in Tucson, Arizona. Income Strategies'

17  managing member is SREIF Manager II.

18                          **FACTUAL ALLEGATIONS**

19      **A.      The Fraudulent Income Fund Offering**

20      20.     Tralka, Braegelmann, Sullivan, and Barr created Income Fund.

21      21.     In April 2016, Income Fund began raising money from investors.

22      22.     Income Fund's Private Placement Memorandum ("PPM") and marketing materials

23  claimed that it would invest in a diversified portfolio of real estate loans that it would originate or

24  acquire and sell.

25      23.     Income Fund's PPM was available to the public upon request.

26      24.     Income Fund also had a PowerPoint overview of the investment, which was available

27  to the public upon request from April 2016 to March 2019.

28      25.     Income Fund also had FAQs, which were available to the public upon request from

April 2016 to March 2019.

26.     Income Fund made a $30 million offering of Class A membership interests that it claimed was exempt from registration under Rule 506(b) of Regulation D.

27.     From May 2016 through March 2019, Income Fund raised approximately $4,126,469 from about 59 investors.

28.     According to Income Fund's marketing materials, Tralka and Braegelmann had experience in investing in real estate ventures and thus were responsible for evaluating real estate investments for the fund.

29.     Income Funds' PPM and marketing materials claimed that Good Steward and Barr advised Income Fund.

30.     Good Steward and Barr served as Income Fund's investment adviser in name only.

31.     Sullivan handled investor relations for Income Fund and his responsibilities included providing potential investors with information and updates about the fund and answering questions.

32.     Sullivan provided the Income Fund PowerPoint and the FAQs to potential investors who expressed interest.

33.     Tralka, Braegelmann, Sullivan, and Barr all reviewed and approved Income Fund's PPM and agreed when it was ready to be provided to investors.

34.     Sullivan drafted marketing materials for Income Fund, and the marketing materials were reviewed and approved by Tralka, Braegelmann, and Sullivan.

35.     Goodman solicited investors by promoting the fund on his radio show and in one-on-one communications with investors.

36.     As of March 2019, Income Fund stopped taking new investor funds or making new investments.

37.     In addition, according to Barr, Good Steward stopped advising Income Fund in March 2019, and Income Fund does not have an investment adviser.

**1.     Failure to pay promised monthly distributions**

38.     Income Fund's PPM and marketing materials misrepresented to investors that they would be paid an 8% return on their investment.

39.     Income Fund's PPM stated that investors were "entitled to receive an annual preferred return . . . on their investment . . . . equal to an annualized rate of eight percent (8.00%). . . . calculated and distributed on a monthly basis."

40.     Income Fund's PowerPoint overview of the investment similarly promised investors that they would receive "a reliable stream of monthly income" – specifically, an "8% Annual Interest Rate paid monthly."

41.     In addition, Income Fund's April 2016 FAQs stated that the fund "pays investors an annual dividend of 8%, payable monthly in equal installments."

42.     However, contrary to representations in Income Fund's PPM and marketing materials, Tralka, Braegelmann, Sullivan and Barr stopped paying investors promised monthly distributions while Income Fund was still raising money from investors.

43.     Tralka, Braegelmann, Sullivan and Barr paid only about half of the monthly distributions promised to investors.

44.     Tralka, Braegelmann, Sullivan, and Barr failed to collect interest on loans and instead allowed interest to accrue over the course of years while still selling Income Fund's securities.

45.     Tralka, Braegelmann, Sullivan and Barr could not pay investors the return promised because Income Fund did not collect sufficient interest on its loan investments.

46.     Although Income Fund invested in eleven real estate loans, it did not collect the interest owed on the majority of these loans.

47.     Instead, the fund accrued interest on its books, and Income Fund's bookkeeper maintained monthly spreadsheets showing the continued accrual of interest on the loans.

48.     As of March 2019, Income Fund had accrued $716,862.40 in unpaid interest receivable by Income Fund on loans totaling approximately $3.5 million.

49.     Tralka, Braegelmann and Sullivan had access to Income Funds' books but never reviewed them.

50.     Tralka and Braegelmann admitted that they did not know if the loans were in default.

51.      Barr also had access to the books and worked directly with Income Fund's bookkeeper.

52.     Income Fund continued to raise investor funds through March 2019 with no change to these representations.

53.     Income Fund stopped paying returns entirely by March 2019.

54.     The representations that Income Fund would pay an 8% return were material to investors' decisions to invest in Income Fund.

55.     When investors complained about not receiving their promised returns, Barr and Sullivan lulled them with various explanations.

### 2.     Misrepresentations Regarding Experienced Managers

56.     Income Fund's PPM and marketing materials misrepresented to investors that its managers had substantial real estate experience.

57.     Income Fund's PPM represented that Tralka "over the last twenty years has bought, held and sold multiple investment properties" and described Braegelmann as having a "30+ year career in real estate investing, commercial construction, land development, and private lending." Similarly, Income Fund's FAQs stated that Tralka and Braegelmann had a "combined total of more than 50 years of real estate investment experience."

58.     Tralka and Braegelmann, however, had limited real estate experience.

59.     Tralka was involved in real estate investing for only a few years and previously worked for a semiconductor company.

60.     Tralka had never before invested in real estate loans on anyone else's behalf before managing Income Fund.

61.     Braegelmann had owned a landscaping company and, as a side business, flipped houses prior to investing in real estate in the mid-1990s.

62.     Braegelmann did not start raising funds from real estate investors until 2010 or 2011.

63.     Similarly, Sullivan had little real estate investment experience before Income Fund.

64.     The representations that Income Fund's managers had substantial real estate experience were material to investors' decisions to invest in Income Fund.

### 3.     Good Steward and Barr's failure to make investment decisions

65.     Income Fund's PPM misrepresented that Good Steward – an SEC-registered

1  investment advisor in the relevant period that owed a fiduciary duty to its advisory clients – and its

2  associated person and sole employee, Barr, would be responsible for making investment decisions.

3        66.     Specifically, the PPM stated that Good Steward, as Income Fund's "Investment

4  Manager," "is responsible for investing the capital and resources of the Fund and monitoring such

5  investments, as necessary, in order to achieve the Fund's investment objective."

6        67.     In reality, Tralka and Braegelmann primarily decided how Income Fund would invest.

7        68.     Barr instead served only as Income Fund's administrator.

8        69.     Tralka, Braegelmann, Sullivan, Barr, and Good Steward allowed Tralka and

9  Braegelmann to make the investment decisions for Income Fund instead of Good Steward and Barr.

10        70.     The representations that Good Steward and Barr would be responsible for making

11  investment decisions were material to investors' decisions to invest in Income Fund.

12       **B.**     **The Fraudulent Income Strategies Offering**

13        71.     In the spring and summer of 2017, Tralka, Braegelmann, Sullivan, and Barr decided to

14  start the Income Strategies investment fund. Like Income Fund, Income Strategies claimed to invest

15  in a diversified portfolio of real estate loans.

16        72.     Income Strategies raised funds pursuant to a $50 million Regulation A offering that

17  was qualified on September 28, 2017.

18        73.     From March 2018 through February 2019, Income Strategies raised approximately

19  $3,174,989.68 from about 96 investors (including investments from affiliates Income Fund and Good

20  Steward).

21        74.     Income Strategies had a website from 2017 through at least 2021.

22        75.     Income Strategies used two registered broker-dealers to solicit potential investors.

23        76.     Income Strategies had an offering circular that was available to the public from 2017

24  through the present.

25        77.     Income Strategies had a slide deck that contained an investor presentation and which

26  was presented to potential investors in at least 2017 and 2018.

27        78.     Tralka, Braegelmann, Sullivan, Goodman and Barr served in the same roles for

28  Income Strategies as they had for Income Fund.

79. Tralka, Braegelmann, Sullivan, and Barr reviewed and approved the offering circular.

80. Tralka, Braegelmann, Sullivan, and Barr drafted and approved the fund's website content.

81. Tralka, Braegelmann, and Sullivan prepared, reviewed and approved the investor presentation slide deck.

### 1. False and misleading representations regarding reaching the investment minimum and escrow

82. Income Strategies' offering circular represented to potential investors that it would not use investor funds, and would hold them in escrow, until it raised $1 million from third party investors.

83. Specifically, the offering circular represented that "[w]e will not start operations or draw down on investors' funds and admit investors as members until we have raised at least $1,000,000 in this offering. Until the minimum threshold is met, investors' funds will be revocable and will be held in an escrow account . . . . ." The offering circular further explained that "[w]e will not commence any significant investment operations until we have raised $1,000,000 from persons who are not affiliated with us or our Managing Member."

84. These representations, however, were false and misleading.

85. First, almost 85% of the purported $1 million threshold was compromised of investment from affiliates Income Fund and Good Steward, and not from third party investors.

86. Specifically, in February 2018, approximately $215,426.60 was transferred from Income Fund and $630,666.66 from Good Steward, for a total of $846,093, to Income Strategies.

87. Tralka, Braegelmann, Sullivan, Good Steward and Barr were responsible for these transfers.

88. Second, once Income Strategies received funds from individual investors, in February and March 2018, when it raised $281,000, Tralka, Braegelmann, Sullivan, and Barr started loaning these investor funds for property development without having reached $1 million raised from third party investors.

89. Third, because Tralka, Braegelmann, Sullivan, and Barr immediately started using

1  investor funds, these initial investor funds were never held in escrow as promised. In fact, it was not

2  until June 2018 that Income Strategies raised $1 million from third party investors.

3       90.    Tralka, Braegelmann and Barr had planned as early as December 2017 for Income

4  Fund to invest in Income Strategies.

5       91.    Tralka understood that Income Strategies could only commence investment activity

6  when the $1 million investment minimum was reached.

7       92.    In addition, Sullivan understood that without the investment from affiliate Income

8  Fund, Income Strategies' investor funds would remain in escrow "doing nothing" and no investments

9  could be made.

10      93.    Tralka, Braegelmann, Sullivan, Barr, and Good Steward used money from Income

11  Strategies affiliates Income Fund and Good Steward to purportedly reach the $1 million investment

12  minimum necessary to begin investing.

13      94.    The representations that funds would be held in escrow until a minimum $1 million

14  investment minimum were met were material to investors' decisions to invest in Income Strategies.

15           **2.    Failure to pay promised monthly distributions**

16      95.    Similar to Income Fund, Income Strategies represented in its offering circular that it

17  would invest "with the goal of attaining a portfolio of real estate assets that provide attractive and

18  stable returns to our investors."

19      96.    Furthermore, Income Strategies' investor presentation slide deck stated that it targeted

20  an 8% return and explicitly described "Distributions" as "[m]onthly cash distributions to investors to

21  pay an annualized 8.0% preferred return."

22      97.    Income Strategies continued to raise investor funds through approximately February

23  2019 without any changes to these representations.

24      98.    Income Strategies accounting records show, however, that as early as August 2018,

25  two loans in the nine-loan portfolio failed to make interest payments.

26      99.    Subsequently, in April 2020, Income Strategies' independent auditor questioned why

27  two loans had stopped accruing interest and three loans had stopped paying interest. Barr responded

28  that two loans were in default, two loans had depleted their interest reserves, and the remaining loan

should be able to accrue interest in the future.

100.     As a result, the audit report for FY 2019 stated that the creditworthiness of the borrowers could not be substantiated and that the audit firm could provide no assurances on the principal value or the gains and losses recorded in the financial statements.

101.     As of March 2021, Income Strategies had $288,469.13 in distributions payable but had paid only approximately $163,321.08.

102.     Tralka, Braegelmann, Sullivan, and Barr failed to collect interest on loans and instead allowed interest to accrue over the course of years while still selling Income Strategies' securities.

103.     Tralka and Braegelmann failed to review Income Strategies' financials and did not know whether any of the loans were in default.

104.     Barr received emails from Income Strategies' auditor and bookkeeper seeking information related to the missing interest payments, and acknowledged that interest payments were not being made.

105.     In 2020, two Income Strategies investors complained to Sullivan and Barr that they had not received their regular distributions and that the return on investment was below the promised 8% return.

106.     In July 2020, Sullivan told one of these investors that they were trying to sell the portfolio to repay investors. On information and belief, no such sale has occurred.

107.     The representations that Income Strategies would pay an 8% annualized return were material to investors' decisions to invest in Income Strategies.

**3.     Misrepresentations regarding experienced managers**

108.     Like Income Fund, Income Strategies' offering circular, its investor presentation slide deck, and its website, misrepresented to potential investors that its managers had substantial real estate experience.

109.     The offering circular, the slide deck, and the website stated that Tralka "over the last twenty years has bought, held and sold multiple investment properties" and described Braegelmann as having a "30+ year career in real estate investing, commercial construction, land development, and private lending."

110.    These representations regarding Tralka and Braegelmann's real estate experience were false and misleading.

111.    The representations that Income Strategies' managers had substantial real estate experience were material to investors' decisions to invest in Income Strategies.

### 4.    Good Steward and Barr's failure to make investment decisions

112.    As with Income Fund, Good Steward and Barr were supposed to make the investment decisions for Income Strategies.

113.    Income Strategies' offering circular stated that its managing member "has delegated responsibility and authority for making investment decisions for the Company to Good Steward Capital Management, Inc., an Arizona Corporation and investment adviser registered with the Securities and Exchange Commission, or SEC ('Investment Manager')." The offering circular further represented that "[w]e depend on our Investment Manager [Good Steward] to select our investments and conduct our operations," and that Good Steward, would "have the sole and absolute discretion to determine whether or not to make, acquire or sell a particular [l]oan."

114.    These claims about Barr's management of Income Strategies were repeated orally. An Income Strategies investor who repeatedly spoke to Barr believed that Barr managed the fund.

115.    In reality, Tralka and Braegelmann primarily decided how Income Strategies would invest.

116.    Barr instead served only as Income Strategies' administrator.

117.    Tralka, Braegelmann, Sullivan, Barr, and Good Steward allowed Tralka and Braegelmann to make the investment decisions for Income Strategies instead of Good Steward and Barr.

118.    The representations that Good Steward and Barr would be responsible for making investment decisions were material to investors' decisions to invest in Income Strategies.

### C.    Defendants knew, or were reckless in not knowing, they were making materially misleading statements and engaging in deceptive conduct

119.    Tralka, Braegelmann, Sullivan, Good Steward and Barr knew, or were reckless or negligent in not knowing, that they made and disseminated materially false and misleading

statements to potential investors.

120.    Income Fund's PPM, for which Tralka, Braegelmann, Sullivan, and Barr were responsible, and its marketing materials, for which Tralka, Braegelmann and Sullivan were responsible, falsely represented to potential investors that they would receive a reliable stream of monthly income at 8% annually, that the fund was managed by experienced real estate investors; and that Good Steward and Barr would make the investment decisions.

121.    Income Strategies' offering circular and website, for which Tralka, Braegelmann, Sullivan, and Barr were responsible, and marketing materials, for which Tralka, Braegelmann and Sullivan were responsible, made similar misrepresentations and also misrepresented that Income Strategies would meet its $1 million threshold through third party investments.

122.    Tralka, Braegelmann, Sullivan, and Barr "made" the statements at issue in Income Fund's PPM, Income Strategies' offering circular, and Income Strategies' website, because Tralka, Braegelmann, Sullivan, and Barr drafted, reviewed, and approved Income Fund's PPM, Income Strategies' offering circular, and Income Strategies' website.

123.    Tralka, Braegelmann, and Sullivan "made" the statements at issue in Income Funds' and Income Strategies' marketing materials because they drafted, reviewed, and approved the marketing materials for both funds.

124.    In addition, Tralka, Braegelmann, Sullivan, and Barr engaged in fraudulent and deceptive practices and courses of business by failing to collect interest on loans and instead allowing interest to accrue over the course of years while still selling Income Fund and Income Strategies' securities.

125.    Barr and Sullivan furthered this deception when they made lulling statements to Income Fund investors regarding their returns.

126.    Tralka, Braegelmann, Sullivan, and Barr and Good Steward engaged in deceptive practices by allowing Tralka and Braegelmann to make the investment decisions for the fund instead of Good Steward and Barr.

127.    Tralka, Braegelmann, Sullivan, and Barr and Good Steward engaged in a scheme to use money from affiliates Income Fund and Good Steward to purportedly reach the $1 million

threshold it needed to start investing; furthermore, based on this false threshold, they immediately started using investor funds for loans and failed to keep these funds in escrow as promised.

128.    The misrepresentations and deceptive conduct were in the offer or sale and "in connection with" the purchase or sale because the Funds' securities continued to be offered, purchased and sold after the misrepresentations were made and the deceptive conduct occurred.

129.    The false and misleading statements and the deceptive practices are material. Reasonable investors would have considered these representations and deceptive acts to be important to their investment decisions.

130.    Tralka, Braegelmann, Sullivan, and Barr acted with scienter. Tralka, Braegelmann, Sullivan, and Barr all prepared and reviewed the offering documents and had access to the Funds' accounting records, and Tralka, Braegelmann, and Sullivan prepared reviewed both Funds' marketing materials.

131.    Tralka, Braegelmann, Sullivan, and Barr knew, or were reckless, or, alternatively, negligent, in not knowing, that multiple material misrepresentations were made to potential investors and that investor funds raised by Income Strategies were used before the $1 million threshold was properly met.

132.    Good Steward acted through Barr. Therefore, Barr's knowledge, recklessness, and/or negligence may be imputed to Good Steward.

**D.    The offer and sale of investments in Income Funds was an unregistered offer and sale of securities**

133.    Income Fund's offer and sale of securities was not registered with the SEC and the securities were offered and sold through interstate commerce.

134.    There was no registration statement in effect or filed with the SEC with respect to the offering of Income Fund.

135.    No exemption applies to Income Fund's offer and sale of securities.

136.    Income Fund engaged in general solicitation.

137.    Income Fund sold membership interests to investors residing throughout the United States.

138.    In addition, Income Fund failed to take reasonable steps to verify whether investors actually qualified as accredited investors.

139.    Tralka, Braegelmann, and Sullivan sold Income Fund securities because they controlled Income Fund's managing member, drafted the offering and marketing materials and approved the offering.

140.    Sullivan and Goodman communicated with potential investors in Income Fund.

141.    Most of the investors with whom Sullivan and Goodman communicated did not have pre-existing substantive relationships with them.

142.    Sullivan and Goodman described, both orally and in writing, Income Fund's business and the investment to potential investors.

143.    Goodman solicited investors and advertised Income Fund by promoting the fund on his broadcast radio show and in one-on-one communications with investors.

144.    Goodman provided potential investors with specific information directly related to Income Fund, including, for example, that they could expect an 8% return on their investment.

145.    Goodman also provided potential investors with Sullivan's phone number.

146.    Sullivan would then give the potential investors the same information provided by Goodman, as well as additional detail if they asked.

## FIRST CLAIM FOR RELIEF

### Fraud in Connection with the Purchase or Sale of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against Defendants Tralka, Braegelmann, Sullivan, Good Steward, and Barr)

147.    The SEC realleges and incorporates by reference paragraphs 1 through 146 above.

148.    As set forth above, in connection with the purchase or sale of securities, Defendants Tralka, Braegelmann, Sullivan, Good Steward and Barr engaged in a scheme to defraud and made material misrepresentations to investors with scienter.  These included statements to potential investors regarding: (1) the payment of reliable monthly distributions at an 8% annual rate; (2) Tralka and Braegelmann's purported real estate investing experience in excess of fifty years; (3) that SEC-registered investment adviser Good Steward would make the funds' investment decisions, and (4)

1    that Income Strategies would keep investor funds in escrow until meeting its $1 million investment

2    threshold with investments from third parties. These also included fraudulent and deceptive practices

3    and courses of business such as (1) failing to collect interest on loans and instead allowing interest to

4    accrue over the course of years while still selling Income Fund and Income Strategies' securities, and

5    making lulling statements to Income Fund investors regarding their returns; (2) allowing Tralka and

6    Braegelmann to make the investment decisions for Income Fund and Income Strategies instead of

7    Good Steward and Barr; (3) using money from Income Fund and Good Steward to purportedly reach

8    the $1 million threshold for Income Strategies to start investing, and based on this false threshold,

9    immediately starting to use investor funds for loans and failed to keep these funds in escrow as

10   promised.

11         149.   By engaging in the conduct described above, Defendants Tralka, Braegelmann,

12   Sullivan, Good Steward and Barr, and each of them, directly or indirectly, in connection with the

13   purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of

14   the mails, or of the facilities of a national securities exchange:  (a) employed devices, schemes, or

15   artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact

16   necessary in order to make the statements made, in the light of the circumstances under which they

17   were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or

18   would operate as a fraud or deceit upon other persons.

19         150.   By engaging in the conduct described above, Defendants Tralka, Braegelmann,

20   Sullivan, Good Steward and each violated, and unless restrained and enjoined will continue to

21   violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17

22   C.F.R. § 240.10b-5(b).

### SECOND CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**

**Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act**

**(Against Defendants Tralka, Braegelmann, Sullivan, Good Steward, and Barr)**

27         151.   The SEC realleges and incorporates by reference paragraphs 1 through 146 above.

28         152.   As set forth above, in connection with the purchase or sale of securities, Defendants

Tralka, Braegelmann, Sullivan, Good Steward and Barr engaged in a scheme to defraud and made material misrepresentations to investors with scienter or negligently.  These included statements to potential investors regarding: (1) the payment of reliable monthly distributions at an 8% annual rate; (2) Tralka and Braegelmann's purported real estate investing experience in excess of fifty years; (3) that SEC-registered investment adviser Good Steward would make the funds' investment decisions, and (4) that Income Strategies would keep investor funds in escrow until meeting its $1 million investment threshold with investments from third parties. These also included fraudulent and deceptive practices and courses of business such as (1) failing to collect interest on loans and instead allowing interest to accrue over the course of years while still selling Income Fund and Income Strategies' securities, and making lulling statements to Income Fund investors regarding their returns; (2) allowing Tralka and Braegelmann to make the investment decisions for Income Fund and Income Strategies instead of Good Steward and Barr; (3) using money from Income Fund and Good Steward to purportedly reach the $1 million threshold for Income Strategies to start investing, and based on this false threshold, immediately starting to use investor funds for loans and failed to keep these funds in escrow as promised.

153.    By engaging in the conduct described above, Defendants Tralka, Braegelmann, Sullivan, Good Steward and Barr, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails employed devices, schemes, or artifices to defraud or engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

154.    By engaging in the conduct described above, Defendants Tralka, Braegelmann, Sullivan, Good Steward and Barr violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1) & 77q(a)(3).

### **THIRD CLAIM FOR RELIEF**

**Unregistered Offer and Sale of Securities**

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**(Against Defendants Tralka, Braegelmann, Sullivan, and Goodman)**

155.    The SEC realleges and incorporates by reference paragraphs 1 through 146 above.

156.    Defendants Tralka, Braegelmann, Sullivan, and Goodman directly or indirectly offered and sold Income Fund's securities in offerings that are not registered with the SEC and that are not subject to a valid exemption to registration.

157.    By engaging in the conduct described above, Defendants Tralka, Braegelmann, Sullivan, and Goodman, directly or indirectly, singly and in concert with others, has made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer to sell or to sell securities, or carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale, when no registration statement had been filed or was in effect as to such securities, and when no exemption from registration was applicable.

158.    By engaging in the conduct described above, Defendants Tralka, Braegelmann, Sullivan, and Goodman each violated, and unless restrained and enjoined, will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) & 77e(c).

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

### (Against Relief Defendants Income Fund and Income Strategies)

159.    The SEC realleges and incorporates by reference paragraphs 1 through 146 above.

160.    Relief defendants Income Fund and Income Strategies received proceeds from Defendants' conduct, funds over which they have no legitimate claim.

161.    Relief defendants Income Fund and Income Strategies obtained the ill-gotten gains described above as part of the securities law violations alleged above, under circumstances in which it is not just, equitable, or conscionable for them to retain the funds.

162.    By engaging in the foregoing conduct, Income Fund and Income Strategies have been unjustly enriched and must disgorge their ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged

1   violations.

2   **II.**

3      Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure,

4   permanently enjoining Defendants Tralka, Braegelmann, Sullivan and their officers, agents, servants,

5   employees, and attorneys, and those persons in active concert or participation with any of them, who

6   receive actual notice of the judgment by personal service or otherwise, and each of them, from

7   violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c), and

8   77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17

9   C.F.R. § 240.10b-5]; enjoining Defendant Goodman, his officers, agents, servants, employees, and

10  attorneys, and those persons in active concert or participation with any of them, who receive actual

11  notice of the judgment by personal service or otherwise, and each of them, from violating Sections

12  5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)]; and enjoying Defendants Good

13  Steward and Barr and their officers, agents, servants, employees and attorneys, and those persons in

14  active concert or participation with any of them, who receive actual notice of the judgment by

15  personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act

16  [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5

17  thereunder [17 C.F.R. § 240.10b-5].

18  **III.**

19     Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure,

20  pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], permanently enjoining

21  Defendants Tralka, Braegelmann, Sullivan, Goodman, Barr and their officers, agents, servants,

22  employees and attorneys, and those persons in active concert or participation with any of them, who

23  receive actual notice of the judgment by personal service or otherwise, from, directly or indirectly,

24  including, but not limited to, through any entity owned or controlled by each, participating in the

25  issuance, purchase, offer, or sale of any security in an unregistered offering by an issuer, provided,

26  however, that such injunction shall not prevent each from purchasing or selling securities for his own

27  personal account.

28

**IV.**

Issue judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and/or Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], prohibiting Defendants Tralka, Braegelmann, Sullivan, and Barr from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

**V.**

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5) and 78u(d)(7)].

**VI.**

Order Relief Defendants to disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon.

**VII.**

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

**VII.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

///

///

///

///

///

///

## VII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 27, 2023              Respectfully submitted,

                                       /s/ *Daniel O. Blau*
                                       Daniel O. Blau
                                       Jacob Regenstreif
                                       Daniel Lim
                                       Attorneys for Plaintiff
                                       SECURITIES AND EXCHANGE COMMISSION